Royal Court Realty Co., Inc., Plaintiff, *v.* William P. Thomas and Others, as Trustees under a Declaration of Trust Dated December 27, 1938, for the Benefit of Certificate Holders in Guarantee No. 101,233 of Lawyers Mortgage Company, Defendants.

First Department, April 19, 1940.

*Oscar Roy Chalk*, for the plaintiff.

*Samuel L. Scholer* of counsel [*Carl Pack* and *Raymond Golden* with him on the brief; *Natanson, Pack & Scholer*, attorneys], for the defendants.

O'Malley, J. The question to be decided is whether under an extension agreement of a mortgage the plaintiff was required to pay six per cent interest from the date of maturity to the time of payment of the principal, or but five per cent, the rate paid under the agreement to the date of maturity.

Defendants are the judicially-appointed trustees for the certificate holders under a bond and mortgage covering premises 2386 Ryer avenue, New York city, originally executed and delivered by the

then owner, Danclare Holding Corporation, and running to Lawyers Mortgage Company.

When the mortgage company was placed in rehabilitation title to the bond and mortgage passed successively to the Superintendent of Insurance, the Mortgage Commission of the State of New York, and, finally, to the present defendants. Plaintiff, which had become the owner of the equity prior to the rehabilitation proceedings, entered into the extension agreement on June 12, 1936, under the terms of a final order approving a plan for the modification of the term, interest and amortization of the bond and mortgage.

This final order provided:

" The interest payable by the owner on the unpaid principal amount of the bond and mortgage shall be at the following rates:

" (a) For the period commencing February 1, 1934, and ending on the date of maturity, October 10, 1937, at the rate of 5% per annum."

Thereafter the extension agreement was entered into between the plaintiff and the Mortgage Commission of the State of New York. So far as material, it provided that:

" the Party of the Second Part [plaintiff] meanwhile pay interest on the amount owing on said bond at the rate of six per centum per annum from February 1, 1934, to October 10, 1937, quarter annually, on the first days of August, November, February and May in each year.

" So long as the owner of the said premises shall continue to comply with all the terms and conditions of said bond and mortgage as extended and modified, the owner or holder of the mortgage agrees to accept on account of said mortgage interest at the rate of five per centum per annum from February 1, 1934, to October 10, 1937, payable on the days aforementioned. The owner or holder of this mortgage further agrees that if, at the end of the term of this mortgage, the owner of said premises shall have duly made all payments on account of reduction of principal required to be made by this agreement, then the mortgagee will waive all further payments of interest which became due during the period that this mortgage shall have been extended by this agreement, but in the event that there shall be any default in any of the terms and conditions on the part of the owner of said mortgaged premises, and such default shall have continued for a period of fifteen days, then all interest remaining unpaid shall be immediately due and on or after the date of such default, interest on this mortgage shall be payable at the rate of six (6%) per centum per annum."

During the term of this agreement whereby the plaintiff assumed liability for the payment of the mortgage indebtedness, it made all payments of interest, taxes and amortization as required thereby but did not pay the final balance of the principal indebtedness as covenanted on October 10, 1937, and did not make such final payment until February 23, 1939.

Interest has been paid from the date of maturity, October 10, 1937, to date of final payment, February 23, 1939, at the rate of six per cent under protest, and the one per cent difference is now held in escrow by the defendant trustees pending this adjudication as to the rights of the parties.

The provisions of the extension that up to the date of maturity five per cent annually would be payable on condition that all the terms and conditions of the extended and modified bond and mortgage would be complied with and that in any event after date of maturity, six per cent would be payable, did not violate the provisions of section 1077-cc of the Civil Practice Act or constitute a void agreement or waiver under section 1077-d of the Civil Practice Act.

It is to be noted that section 1077-cc of the Civil Practice Act, as it existed at the time the mortgage modification and extension agreement was made, was amended as of May 28, 1937, by chapter 713 of the Laws of 1937 by deleting the words " or any agreement reducing such rate." Neither under the statute as originally enacted nor as so modified were these interest payment provisions invalid. The statute provides that " the rate of interest * * * shall not be increased by reason of the maturity of such obligation * * * but shall continue after such maturity *at the rate specified in such obligation* * * *." (Italics mine.) Here the rate of interest was not increased by the maturity of the obligation. In the first place the five per cent provision was conditioned upon compliance with the terms and conditions of the bond and mortgage which have been violated by non-payment of the balance of principal due at the maturity date. While under the emergency legislation certain remedies have been taken away or suspended by the provisions of sections 1077-a and 1077-b of the Civil Practice Act, contract and other rights are not otherwise impaired and may be enforced. (*Zajic* v. *Sikora Realty Corp.*, 252 App. Div. 343; *Kress* v. *Central Trust Co. of Rochester*, 246 id. 76; affd., 272 N. Y. 629.) Default having occurred in the payment of principal, interest at the rate of six per cent became payable.

Apart from the default, moreover, the provisions of the extension agreement calling for the payment of six per cent after the date of maturity are otherwise enforcible. As already noted, any increase

as of the date of maturity was not occasioned " by reason of the maturity of such obligation," but because the agreement of the parties expressly provided therefor. Different rates of interest for various times, if agreed upon, are not prohibited. (*Elltan Realty Co., Inc.*, v. *Irving Trust Co.*, 252 App. Div. 882.)

Surely it would not be contended that, if as originally executed, the bond and mortgage had provided for varying rates of interest, six per cent to be paid after the date set for maturity, such provisions would be unenforcible. It is the rule in equity, moreover, that an extension agreement has the effect of modifying an original condition of a mortgage to the same extent as if the terms of the new agreement were incorporated in the original condition. (*Mortgage Commission of State of New York* v. *Fay*, 255 App. Div. 622, 624; affd., 281 N. Y. 637.)

Nor may plaintiff maintain that the interest provisions of the extension agreement ran counter to the order authorizing its making. Assuming without conceding that it did so, the plaintiff having executed it with full knowledge of its provisions and having accepted its benefits may not here seek to avoid its terms. (*Mayor, etc., of New York* v. *Sonneborn*, 113 N. Y. 423; *City of Buffalo* v. *Balcom*, 134 id. 532; *City of New York* v. *Delli Paoli*, 202 id. 18, 23, 24.)

For the reasons indicated, therefore, judgment should be directed in favor of the defendants, but without costs.

MARTIN, P. J., TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

Judgment unanimously directed in favor of the defendants, without costs. Settle order on notice.