TEMPLE MANAGEMENT CORP., Plaintiff, *v.* MANUFACTURERS TRUST COMPANY, as Trustee for the Benefit of Certain Certificate Holders of BOND AND MORTGAGE GUARANTEE Co., Defendant.*

Supreme Court, Special Term, Kings County, January 4, 1945.

* Cf. *Emdee Management Corp.* v. *Kaufman*, 293 N. Y. 916.— [REP.

*Isaac Ellman* for plaintiff.

*Joseph L. Callahan* for defendant.

MacCrate, J. Judgment for defendant dismissing the complaint, with costs. The Court of Appeals in *Metropolitan Savings Bank* v. *Tuttle* (290 N. Y. 497) has stated that section 1077-cc of the Civil Practice Act was hastily framed and that transposition of language is necessary to arrive at the legislative intent. In the cited case it is stated that by section 1077-cc of the Civil Practice Act it was intended that the *status quo* as of the date of maturity of a mortgage should continue during the emergency period. In that case the mortgage had expired before the emergency period began, and the rate of interest fixed by the bond was held to be the statutory rate of interest collectible after maturity. In *Brighton Operating Corp.* v. *Morrison* (291 N. Y. 6) the mortgage had matured prior to the original emergency period. It was thereafter extended during and matured in the emergency. The Court of Appeals held that after the expiration of the period fixed by the extension agreement the interest rate agreed upon in that agreement and not the rate in the bond at the time of original maturity was collectible.

In the case at bar there were two extension agreements entered into during the statutory emergency period. The first was dated February 27, 1935, and extended the time for payment of the principal to November 1, 1937. That instrument provided for payment of 6% for a designated time and 5% thereafter until the expiration date fixed in the extension agreement. Thereafter another extension agreement was entered into on December 23, 1940. It provided for installment payments on given dates and final payment on January 1, 1944. Interest was to be paid to December 1, 1943, at 4½% and from December 1, 1943, to January 1, 1944, at 6%. By virtue of section 1077-g of the Civil Practice Act the provisions of the

moratorium sections of the Civil Practice Act were not applicable to the bond and mortgage here, save as to the final payment thereon, provided all installments agreed to be paid were met. All installments and interest were paid in accordance with this agreement. The balance of the principal was not paid. Plaintiff contends that 4½% provided in the second agreement or 5% in the first is the limit of defendant's right to interest since the maturity date set in the second agreement. But in view of the provisions of section 1077-g of the Civil Practice Act, it cannot be held that the rate of interest fixed in the first mentioned extension agreement controls. The Legislature has declared section 1077-cc as well as other sections are not applicable to a mortgage extended as this one except as to the final payment. That must mean the final payment provided for by the last extension upon which the parties agreed. There is nothing to suggest that the last extension agreement was a cover to escape the effect of section 1077-d. The parties had a right to enter into that agreement. If the Legislature had intended that the interest rate in an extension agreement prior to July 1, 1937, could not be increased during the period provided by a subsequent extension agreement it would not have declared that the moratorium protection " shall not apply  *  *  *  to the mortgages so extended or modified, nor to any obligations in connection with or secured by any such mortgages " except the final payment (Civ. Prac. Act, § 1077-g). Therefore, the last extension agreement must be consulted to fix the interest rate that defendant can claim. Plaintiff insists that by reason of that agreement 4½% is payable. Defendant demands 6%. When this obligation matured the interest due to the final payment was paid. The rate from October 1, 1943, to December 1, 1943, was 4½%. From December 1, 1943, to January 1, 1944, the balance due on October 1st was earning interest at the rate of 6% for defendant not because of the maturity of the obligation but because the parties had contracted in that fashion. The status quo at maturity (*Metropolitan Savings Bank* v. *Tuttle,* 290 N. Y. 497, *supra*) was an obligation paying 6%.

*Elltan Realty Co.* v. *Irving Trust Co.* (252 App. Div. 882) most nearly resembles the situation presented here. In that case after an agreement of consolidation of two mortgages and extension of time to pay with a provision for 5½%, the parties in 1935 modified such agreement by reducing the interest rate to 4% for all but eighteen days of the extension term and agreed that in other respects the terms of the bond should be effective. The original rate was held to be payable as the one existing at maturity.